UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:14-CV-126-GNS-LLK

TIMOTHY HINES                                                        PLAINTIFF

v.

CAROLYN W. COLVIN                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Magistrate Judge King's Findings of Fact, Conclusions
of Law and Recommendation ("R&R") (Findings of Fact, Conclusions of Law and
Recommendation, DN 21 [hereinafter "R&R"]), and the objections thereto by Defendant
Carolyn W. Colvin, acting Commissioner of the Social Security Administration ("the
Commissioner") (Commissioner's Objections to Magistrate Judge's R. & R., DN 22 [hereinafter
"Objs."]). For the reasons stated below, the Court hereby **OVERRULES** the Commissioner's
objections and **ADOPTS** the Findings of Fact, Conclusions of Law and Recommendation of
Magistrate Judge King in full.

## I.      STATEMENT OF FACTS AND CLAIMS

Plaintiff Timothy Hines ("Hines") served in the United States Marine Corps from 1986 to
1992, during which time he served in Saudi Arabia and Kuwait. (Administrative R. 223, 879
[hereinafter "R."]). Hines then worked as welder for a time, and from 1999 until 2007 drove a
truck in various capacities for various employers. (R. 498-505).

On October 22, 2007, Hines underwent a biopsy of the muscle on his left thigh in order to
confirm a suspected diagnosis of polymyositis. (R. 652-62). The Department of Veterans Affairs

granted Hines disability pension benefits effective November 1, 2007, based on, *inter alia*, a review of Hines's treatment reports from the Veterans Administration ("VA") from May 5, 1999 through November 19, 2007. (R. 1180-81). The last progress note for that time period contains the following diagnoses: polymyositis, sleep disturbances, essential hypertension, hyperlipidemia, allergic rhinitis, and obesity. (R. 620-21).

Hines applied for Disability Insurance Benefits on November 23, 2007, stating that his disabling condition began on September 1, 2007. (R. 158, 455).  His last insured date was December 31, 2012. (R. 161). In a letter dated April 14, 2008, Hines's treating physician, Dr. J. Stephenson, listed 17 diagnoses that applied to Hines and stated: "The total of his medical conditions leave him totally disabled. . . . [H]is conditions are not expected to improved [sic] significantly over time. He is not a candidate for vocational rehabilitation due to these conditions." (R. 794). Hines's application was denied initially on May 6, 2008, and upon reconsideration on June 25, 2008. (R. 158). Administrative Law Judge ("ALJ") Kayser held hearings regarding Hines's application on March 3, 2010 (R. 217) and May 25, 2010 (R. 174). On July 1, 2010, ALJ Kayser issued a decision stating that Hines was not disabled. (R. 295).

Hines appealed that decision to the Appeals Council, which issued an order on November 8, 2011, vacating ALJ Kayser's decision and remanding the case back to him. (R. 311-13). The Appeals Council noted that: (1) the decision relied upon the statements of Dr. Melissa Couch, Ph.D., who evaluated Hines's mental abilities (R. 796-802) and made statements inconsistent with her own report; (2) the decision did not address or weigh her detailed opinion; (3) the decision did not include the opinions of two psychological consultants and does not explain why they were not accepted; (4) the decision incorrectly indicated that the VA notes indicated no mental problems, when in fact they did; (5) the decision did not address or weigh the opinion of

2

Dr. Stephenson that Hines is totally disabled, that his conditions are not expected to improve significantly, and that he is not a candidate for vocational rehabilitation; (6) the decision did not address or weigh the opinion of Hines's work abilities given by Dr. Fritzhand, who performed a consultative examination of Hines; (7) the decision did not address "the consideration given to the testimony of medical expert Dr. Cooke"; and (8) the decision did not address or indicate the consideration of "multiple work employability statements in VAMC progress notes that the claimant can perform sedentary work or a range of sedentary work." (R. 311-13).

On remand ALJ Kayser held additional hearings on August 30, 2012 (R. 242) and December 12, 2012 (R. 270). On January 25, 2013, ALJ Kayser issued a second unfavorable decision finding that Hines is not disabled. (R. 158-67). The Appeals Council declined to review ALJ Kayser's second decision. (R. 1-4).

On September 5, 2014, Hines filed his Complaint with this Court. (Compl., DN 1). Following the filing of the administrative record and fact and law summaries from each party (Pl.'s Fact & Law Summ., DN 15; Def.'s Fact & Law Summ., DN 20), Magistrate Judge King submitted a Findings of Fact, Conclusions of Law and Recommendation. Magistrate Judge King "recommends that this matter be remanded to the Commissioner for calculation and payment of past-due Title II benefits based on [Hines's] application for Title II benefits filed on November 23, 2007." (R&R 12). The Commissioner objects to that recommendation. (Objs.). This matter is ripe for adjudication.

## II.    JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four.

### III.   STANDARD OF REVIEW

In general, this Court conducts a *de novo* review of the portions of a United States magistrate judge's report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). In conducting its review, this Court "may accept, reject, or modify, in whole or in party, the findings or recommendations [of] . . . the magistrate." *Id.*

### IV.   DISCUSSION

The Commissioner objects to Magistrate Judge King's R&R on four grounds: (1) the evidence does not establish that Hines is entitled to an outright award of benefits; (2) Magistrate Judge King erred in concluding that ALJ Kayser improperly weighed the various medical opinions offered; (3) because Magistrate Judge King identified unresolved credibility issues, remand is the appropriate outcome rather than an outright award of benefits; and (4) given new evidence not presented to ALJ Kayser, remand for an award of benefits is inappropriate. (Objs. 2, 3, 6, 8).

#### A.   Substantial Evidence Requirement

The Commissioner first notes that "if substantial evidence supports the ALJ's decision, it must be affirmed, even if substantial evidence also supports the opposite conclusion." (Objs. 3). The Sixth Circuit has used very similar language to express this rule:

> If substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal stands, we are not at liberty to reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. Conversely, however, we must reverse and remand if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.

*Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011) (citations omitted).

4

In the R&R, Magistrate Judge King states that ALJ Kayser did not "give good reasons for preferring" a non-treating physician's opinion over a treating physician's opinion (R&R 4), that ALJ Kayser's discounting of Hines's credibility is "not adequately supported by the record as a whole" (R&R 10), and that ALJ Kayser's credibility assessment of Hines was deficient for not evaluating the side effects of Hines's medications (R&R 10), but does not state that ALJ Kayser's opinion was not supported by substantial evidence. Instead, Magistrate Judge King asserts that ALJ Kayser failed to apply the correct legal standards when he weighed the medical opinion evidence and made credibility determinations. (R&R 8, 10). Therefore, the Court will not undertake an analysis regarding whether or not ALJ Kayser's decision was supported by substantial evidence, but will instead address the legal standards which Magistrate Judge King found that ALJ Kayser did not apply.

### B.   __Medical Opinions__

As the Sixth Circuit has held:

> [A]n ALJ may only choose not to give a treating physician's opinion controlling weight if she gives "good reasons . . . for the weight give[n]," 20 C.F.R. § 404.1527(d)(2) (now in 20 C.F.R. § 404.1527(c)(2)) and if those reasons are "supported by the evidence in the case record, and [are] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," SSR 96-2p, 1996 WL 374188, at *5 (1996).

*Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) (second, third, and fourth alterations in original). Dr. J. Stephenson ("Dr. Stephenson"), who practices at the Veterans Administration Medical Center (VAMC) in Lexington, Kentucky, is Hines's treating physician. (R. 164; R&R 2). Dr. Stephenson's name appears twice in ALJ Kayser's January 25, 2013, Decision: "The Appeals Council remanded the case to reevaluate the limitations indicated by treating physician Dr. Stephenson . . . On April 14, 2008, treating physician Dr. J. Stephenson,

issued a statement that . . . the total medical conditions leave the claimant totally disabled." (R. 164). ALJ Kayser then dismisses Dr. Stephenson's opinion by citing one progress note falling between a September 18, 2007, progress note and a November 20, 2007, Admission/Discharge progress note stating "no impact on sedentary employment"[1] (R. 571), and one progress note dated November 15, 2007, stating an opinion of 50% improvement since Hines started prednisone in October 2007 (R. 576), and showing that Hines's extremity strength was -5/5 (R. 578).

"If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion, but must apply other factors to determine what weight to give the opinion . . . ." *Gentry*, 741 F.3d at 728. These factors include "'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.'" *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing § 404.1527(c)(2)) (internal quotation marks omitted)). An ALJ may not, then, "implicitly reject" a treating physician's opinion and remain in compliance with applicable agency regulations.

The Commissioner argues that Dr. Stephenson's opinion is a "blanket statement of total disability" which is entitled to no special weight. (Objs. 5 (citing 20 C.F.R. § 404.1527(d)(1))). Magistrate Judge King found that Dr. Stephenson's opinion was a genuine medical opinion, specifically because of the additional language offering the opinion that Hines is not a candidate

---

[1] ALJ Kayser states that this progress report falls between "September 18, 2007 to October 8, 2007." (R. 164). Magistrate Judge King states that the progress report was generated "in September, 2007." (R&R 4). In its review of the record, however, the Court finds the date of the information at issue as noted.

for vocational rehabilitation. (R&R 5-7). The medical evidence prior to Dr. Stephenson's April 14, 2008, report supports Magistrate Judge King's view.

A December 5, 2007, progress noted "still with pain in jts muscles," and "short term memory impacted must keep notebook." (R. 760). On March 21, 2008, Dr. Stephenson stated in a progress noted Hines's polymyositis diagnosis and made the following note: "Per Rheum . . . Limited ability to perform ADL directly related to this condition."[2] (R. 708). On April 1, 2008, Hines underwent a left tympanoplasty. It was noted at that time that his lungs were "abnormal very diminished especially in bases." (R. 718). Hines's medical conditions continued, and Dr. Stephenson utilized his experience in treating veterans of Gulf War I to reach the conclusion that Hines should not work and that this state of affairs would likely not improve. This constitutes a genuine medical opinion.

By summarily rejecting Dr. Stephenson's opinion without explanation and analysis pursuant to 20 C.F.R. § 404.1527(c)(2), ALJ Kayser failed to apply the controlling regulations. His decision is therefore not supported by substantial evidence. *See Gentry*, 741 F.3d at 729 ("The 'ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (citing *Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011))).

---

[2] The quoted text is all capitalized in the original, however the Court modified the text for readability. "ADL" is an acronym for "activities of daily living." Joshua M. Wiener et al., *Measuring the Activities of Daily Living: Comparisons Across National Surveys*, 45 J. Gerontology: Soc. Sci. 229-37 (1990), *available at* http://aspe.hhs.gov/daltcp/reports/meacmpes.htm ("The term 'activities of daily living,' or ADLs, refers to the basic tasks of everyday life, such as eating, bathing, dressing, toileting, and transferring.").

C.      **Credibility Issues**

"The ALJ . . . is tasked with evaluating the credibility of witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Kalmbach*, 409 F. App'x at 863 (citations omitted) (citation omitted). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

Magistrate Judge King found that "the documentary evidence in this case to discount [Hines's] credibility is not adequately supported by the record as a whole," speaking specifically about a piece of metal slag found in Hines's ear in early 2008 and the nature of his dwelling. Judge King also noted that "[t]he ALJ's credibility assessment was deficient for not evaluating the side effects of medications on [Hines's] ability to work." (R&R 10).

The metal slag question began with a January 16, 2008, radiology education note that states, *inter alia*, "MRI cancelled by radiologist due to foreign body that entered Mr. Hines's left ear while welding on 1-15-07." (R. 751). An addendum the same day stated, "Foreign body entered Mr. Hines's left ear on 1-15-08 NOT 1-15-07." (R. 751). A March 5, 2008, otolaryngology clinic physician note concurred that "a piece of metal slag fell into left ear and caused a perforation in Jan 2008." (R. 728). Hines testified at his first hearing before ALJ Kayser on March 3, 2010 that the slag had "obviously been in there for years. It, it was a rusted looking like a BB," and stated "I don't remember it, sir. I haven't welded since — oh it's been years and years." (R. 229-30). In his January 25, 2013, Decision, ALJ Kayser noted the March 5, 2008 progress note, but made no mention of Hines's testimony in contradiction. (R. 165).

8

The dwelling in question is described as "2 story house, 2 STE, basement has 10 steps to get down." (R. 1176). Hines testified on March 3, 2010, however, that he lives in a one-story house with no basement. (R. 234-35).

Finally, Magistrate Judge King notes that one of the primary bases for Hines's disability claim is that he cannot maintain employment due to the side effects of multiple medications that he is required to take. Judge King found ALJ Kayser's credibility determination to be deficient for not evaluating the side effects of medications on Hines's ability to work. (R&R 10). The Court finds no analysis as to the side effects of Hines's medications in ALJ Kayser's January 25, 2013, Decision, which renders the decision incomplete. Because ALJ Kayser found Hines not to be credible, the Court will assume that ALJ Kayser did not believe that Hines's assertion that the side effects of his medication contribute to an overall condition of disability was credible. If ALJ Kayser believed that Hines's assertion was not credible, it was his duty to explain what record or testimonial evidence supported that conclusion.

The Commissioner argues that Hines waived any argument about ALJ Kayser's credibility determinations as he offered no specific argument identifying the errors and instead simply stated that the credibility assessment of Hines was "patently wrong." (Objs. 6). The Commissioner is correct that the portion of Hines's Fact and Law Summary addressing credibility only asserts that the credibility determination of ALJ Kayser as to Hines was patently wrong. (Pl.'s Fact & Law Summ. 8). The three credibility issues mentioned above, however, do appear in Hines's Fact and Law Summary as examples of "glaring inconsistencies." (Pl.'s Fact & Law Summ. 6). The Court finds that these inconsistencies were appropriately noted and addressed by Magistrate Judge King as instances of erroneous credibility determinations. Hines therefore did not waive these arguments as to ALJ Kayser's credibility determination.

9

ALJ Kayser uses these three examples as well as others to bolster his credibility determination as to Hines. (R. 165). One other example he noted was the Hines "denied any difficulty dressing, feeding, walking and with activities of daily living." (R. 165 (citing R. 32, R. 132)). As noted in subsection C above, there are instances in the record in which Hines *did* have difficulty with the activities of daily living. On March 5, 2008, it is noted in a Mental Health Physician Note that Hines then "[found] it difficult to perform everyday activities." (R. 713-14). On March 21, 2008, Dr. Stephenson stated in a progress noted Hines's polymyositis diagnosis and made the following note: "Per Rheum . . . Limited ability to perform ADL directly related to this condition." (R. 708). The final example given by ALJ Kayser is that while Hines complained of pain, he exhibited no pain behaviors. (R. 165). This concern by ALJ Kayser notwithstanding, it was noted that as late as May 10, 2012, that Hines has been prescribed narcotic medication for pain. (R. 2003, 2005). If Hines's treating physicians, whose opinions are given controlling weight, believe that he is in sufficient pain to warrant prescribed chronic opioid use, the Court is not willing to second-guess the physicians' best medical judgment. In sum, ALJ Kayser's credibility determination as to Hines is not supported by the record as a whole.

### D.    New Evidence

In light of the foregoing analysis under subsections A, B, and C, the Court declines to address the evidence contained in Hines's treatment records from January 2013, through May 2014, which were not before ALJ Kayser. An evaluation of that evidence is immaterial to the conclusions reached herein.

### E.    Judicial Award of Benefits

"Benefits may be awarded immediately if all necessary factual issues have been resolved, 'the proof of disability is strong, and opposing evidence is lacking in substance, so that remand

would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.'" *Gentry*, 741 F.3d at 730 (citing *Kalmbach*, 409 F. App'x at 865 (internal quotation marks omitted)). The Commissioner argues in various places that remand for calculation of awards is inappropriate, and that a remand to ALJ Kayser is the appropriate remedy if this Court finds ALJ Kayser's decision to be in error. (Objs. 5-6, 8-9).

As described above, the Court has found errors in ALJ Kayser's decision. ALJ Kayser has held four hearings in this matter. The Appeals Council remanded the case to ALJ Kayser following his first decision in order for him to, *inter alia*, address or weigh Dr. Stephenson's opinion, which ALJ Kayser again failed to do in accordance with the applicable regulations in his January 15, 2013, Decision.

The Sixth Circuit has granted an award of benefits after a single hearing before an ALJ due to "the opinions of the treating physicians, [plaintiff's] assertions of disabling pain arising from documented physical illness, injury, and mental impairment, and the extensive medical record . . . ." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 439 (6th Cir. 2013) (citation omitted). It has also granted an award of benefits after a single hearing before an ALJ due to severity of the disabling conditions and in light of the impairments caused by. *Gentry*, 741 F.3d at 730. The Court finds that, after four hearings and having reviewed over one thousand pages of medical evidence, a judicial award of benefits is appropriate as it is supported by substantial evidence, and remand for further proceedings would result only in the presentation of cumulative evidence.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDICATED** that Magistrate Judge King's Findings of Fact, Conclusions of Law and Recommendation (DN 21) is

**ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and the Commissioner's Objections (DN 22) are **OVERRULED**.

This is a final and appealable Memorandum Opinion and Order, and there is no just cause for delay.

**Greg N. Stivers, Judge**
**United States District Court**
July 14, 2015

cc:      counsel of record